Good morning, Your Honors. I'm Ken Argentieri, representing appellant Dr. Lawrence Rudolph in this appeal, and I'd like to reserve two minutes for rebuttal. All right. Watch your time. Thank you, Your Honor. This appeal involves your de novo review of the District Court's denial of Dr. Lawrence's anti-SLAPP motion with regard to three causes of action. The District Court held that the plaintiffs established a probability of success on the merits on three claims. It's Section 632 claim, negligence per se claim, and its invasion of privacy claim. I'd like to address the errors made by the District Court first with regard to the Section 632 claim and the negligence per se claim. To satisfy the second prong of the anti-SLAPP motion, the plaintiffs have to establish a probability of success on their claims. They have to do so with admissible evidence. The plaintiffs in this case didn't admit. Let's go back to step one. Okay. And whether or not this is in furtherance of protected activity, free speech or right to petition. The plaintiffs say that this violates Section 632, the conduct does. So how can that be in furtherance if it's a criminal violation? The cases say that you can't just allege that it is a violation of 632. If that were the situation, you'd have no anti-SLAPP. It would be meaningless. The cases say that it has to be established that it is a violation. It has to be as a matter of law. In this case, we know that that can't be the case because there was a preliminary injunction, and the court found that there was no probability of success on the merits. If this was a clear violation of Section 632, the court would have granted the preliminary injunction. So under the case ---- You're not arguing anymore that the preliminary injunction determination has an impact on our assessment at this stage of this motion, as I understood it. You weren't relying upon the preliminary injunction determination. Not with regard to the denial of the anti-SLAPP under the second prong of the anti-SLAPP analysis. I would be relying on that if the argument is that we violated 632 as a matter of law, and I believe that that would be incorrect. So moving to Section 632, the second prong of 632 and negligence per se, you have to look ---- So the plaintiffs have to produce evidence. Okay. The plaintiffs didn't produce any evidence. The court went and looked at their whole record, and it looked at the Whipple Declaration. In addition, there was the Rudolph Declaration and the two videos that are in evidence and for the court's de novo review of this matter. Let me ask you on that second prong. Isn't our task to look at what the plaintiffs present and assess the credibility, if you will, of their evidence, not balance it against yours on making this second step determination? And a related issue is that Whipple Declaration is in the record. What's wrong with the district judge looking at what the statute says we can look at, which is pleadings and affidavits in the record? I believe that the Whipple Declaration is fair game. I believe the Whipple Declaration doesn't do what either the district court or the plaintiffs wanted to do, and I will explain that. I'm sorry, I lost your first question. No, I think that's fine.  So let's look at the Whipple Declaration. Counsel, when you say the Whipple Declaration is fair game, then you don't object to the court having considered it, right? No, Your Honor. Okay. So let's look at the Whipple Declaration. First of all, we have to figure out what is a confidential communication. It has to be a recording of a confidential communication. That's the basis for both the 632 and the negligence per se claim. And we all have views of what is confidential, but this is a statute. There's a statutory definition of what is confidential, what isn't confidential. And what isn't confidential is any communication made in any circumstance in which the parties may reasonably expect that the communication may be overheard or recorded, may be overheard and recorded. Now, this is an objective standard. Under the cases, your subjective views as to what you thought isn't really relevant. It is an objective standard. But the Whipple Declaration has all sorts of precipient factual objective information about you may not believe it, but that they reduced the volume of their voice when people came by. That's not a subjective analysis. That's Mr. Whipple's declaration that when people are around, the voices went down. So how is that not something we can take into account? Okay. You can take it into account, but let me explain. So what is objective? The two people who are adversaries in litigation go into a public restaurant, public seating. They're in the middle of the restaurant, and they're talking about the litigation. Five to ten ---- But they also had been longtime friends. So it was a different scenario than if someone that you had always dealt with at arms length invited you to a luncheon and you were in proceedings together, as opposed to someone you had a relationship with and you were friends with and you were told that we only sued you because you're the president, you know, we're still friends. So to me ---- Those are there. Those are not subjective. That's setting the stage for why the conversation took place or why it may or may not have been overheard, right? Well, it sets up the scenario. But we're in a public restaurant, and the standard is an objective standard as to whether you have a reasonable expectation that you may be overheard. Is your position that any time there's a conversation in a public place and other people are present that the definition is met in terms of whether you may or may not be overheard? In a public restaurant where there are other people present, yes. You have to ---- That is ---- You don't go into Starbucks without a reasonable expectation that you may be overheard. So what does the ---- So it's a per se rule you're saying that the law supports that if you go into a public restaurant, you have no expectation of privacy. Is that your position? Well, a public restaurant, you know, what is the situation? I mean, you go into a private room. It's the case that says that, that there's a per se rule, California law, that if you go into a public place, you forget it. You have no expectation. No matter what the objective circumstances, you have no expectation of privacy. There's no case that says that, Your Honor. Okay. There's no case. There's no case that says that. Mr. Argent, can I ask you a question? I'm sorry. Whether there was objective expectation of privacy or not, the district court found that there was. Do we review that de novo? Yes. Why? Because under the anti-SLAPP, it's a complete de novo. It's this Court's requirement to take a look at everything. There's no dispute on that. Both parties agree on that issue. It's a complete de novo. Look at all the record and make your own determination. Look at your own thing. So if I just going back to the point that you were making and Your Honor's question, so what has he said in this thing? So we have these facts, but then he says, I think that we lowered our voice and I think that people couldn't hear me. Well, what is he trying to say? What he's trying to say there and what that evidence goes towards is whether people did overhear him or not. But that's not the standard for confidential. Confidential isn't whether somebody overheard me. Confidential is whether we're in a reasonable circumstances where somebody may overhear us. So what he says is, well, I think that we lowered our voice when people came by. What he's acknowledging is that, in fact, they were in a situation where it was reasonable to expect that people may overhear us. And, therefore, what we did was try to lower our voice. So that's you know. Frankly, then you're arguing a per se rule. That's what you're arguing, which you just told me we don't have. If your position is, even if the parties to this conversation both testified, for example, that we lowered our voice, you're saying, well, they may not be successful because it's a public restaurant, because, therefore, there's a per se. That's what your argument leads to and you've acknowledged to me that there's no support for that in the law. There is no case. I think the Wilkins case, you know, comes close, but it does not do that. That's one prong of my argument. The second prong of the argument is let's look at all of the evidence. You don't have to. The judge essentially looked at the Whipple Declaration. If we look at all the evidence, the issue is whether we're weighing credibility. The plaintiffs are saying this is a fact issue as to, you know, as to whether there is an expectation of privacy, of confidentiality. Again, that's not the test. The question is whether they may be overheard. But let me give you an example. Sotomayor, wouldn't the circumstances be a fact question? Well, the question is, is what is the evidence that leads you there? And let me give you an example. If the plaintiff says that the light was red on an issue of importance and the defendant said the light was green, fact issue, okay, credibility. You have to determine that. If that's a fact issue, that's right. But if the plaintiff says that I think the light was red and the defendant says the light was green, there's a video showing you at the time of the incident that the light was green. The question there is, are we then, if you're trying to make a decision, are you – is that a credibility determination? The question is, yeah. Will you have objective – Is the video valid?  There are a lot of questions that could come out of that. Well, let's assume there may – I'm sorry, Your Honor. There's a lot of questions that could arise from a video as well. There might. But let's just assume that that video is there. It's all – it's authenticated. It's about the time. And you're – are you making a decision? Is that a credibility determination at that point in time? Again, is the district judge – when the district judge is assessing this, the district judge is looking at what the plaintiffs are presenting and determining whether or not that provides a reasonable basis for proceeding. He's not – he or she is not assessing the evidence in this. And you're saying – are you saying the district judge should then look at the video and make these – he's not doing that here. Well, he didn't, and that's a big error that he made. He's not supposed to. He's not supposed to. The court – the case law – the court considers plaintiff's and defendant's evidence does not weigh credibility but should grant anti-SLAPP if the defendant's evidence supporting the motion defeats plaintiff's attempt to establish evidentiary support for the claim. It defeats it. But not – that's – that's not the weighing you're talking about. That's – if you look at that evidence and it completely calls the question. It's not assessing the evidence and determining, oh, I think they're right or maybe they're right. That's not what the judge is supposed to do. I believe – I believe that you're supposed to look at all of the evidence, including the – including the videos, and where the plaintiff says, I think this – you know, that is irrelevant with regard to the standard of a – of a statute whether you may be overheard, which is an objective thing. You know, are you in a situation where you may be overheard? I want to turn just very briefly to the invasion of privacy claim because it's slightly different. And the court essentially said that, well, you know, geez, you're recording by – you're recording a conversation. To establish invasion of privacy, you have to have an intrusion into a private place conversation or matter. There is no intrusion here. These are – these were – as the court mentioned, they were friends. They're talking about litigation. They're adversaries talking about something specific. The case law really focuses on where these – this intrusion takes place. So you have the Dietman case and the Miller case where people are trying to get into a doctor's office. They're going into a home to film paramedics at work. And those are – those are potential invasion of privacies. Then you have the Wilkins case, which is a public restaurant. You have the Shulman case, which I think is very instructive. Shulman says there's an accident by the side of the road and you have paramedics helping the victims. On the side of the road, there's no invasion of privacy with regard to what you're listening to or recording. But once they go into the ambulance, the helicopter, which is going to life flight the people, then there is or it may be an expectation of privacy. Did the Whipple declaration say that they stopped conversing when anyone came near? Specifically, he said, I felt that our discussion was kept to between ourselves and any time a waiter or patron came to or by the table, we stopped talking about anything of substance, which is completely belied by the video. But that's in his declaration, and that's what the declaration says. So if they, in fact, stopped conversing when someone came near, would that still, in your view, meet the requirement that they had no reasonable expectation of privacy? Absolutely, because it's not the issue of whether they were overheard. It's whether they were in a situation where they might be. If they stopped conversing, period, what was the likelihood that they would be overheard if they were not talking? The likelihood is small. But the question is, are they in a situation where they are, you know, where there is a reasonable expectation that they may be overheard? But that's the, I mean, you actually are arguing for per se rule. In, it's a, in this, under these facts, you can't go into a public restaurant that is with bench seating, open, five to ten patrons, and have an expectation that you are going to. There are no other cases. Your Honor said, you know, ask me are there cases that say that. There are no cases that go the other way and say that they're not. The cases that go, you know, that talk about expectation of privacy and weighing are situations where you're in, you know, where you're in somebody's house, when you're in somebody's doctor's office, when you're in the, I'm up. I'm up for my time. Well, but, but I think you're acknowledging that it's just by what you've said about the layout of the restaurant. We have to look at the, at the, at the factual situation. We can't just say it's a public place and therefore you, because you could conceivably be overheard, then you have no expectation of privacy. Even you're acknowledging that you have to take a look at the particular circumstances of the, of the conversation and where it took place. You can't just do a broad brush, it's impossible to have any privacy in this circumstance. Well, it's a question of whether a reasonable expectation and where you have, for example, where you have an open, open seating with people around you, I believe that that is a, you have to do the analysis and there is a reasonable, there is no reasonable expectation that you won't be overheard. If you, you know, if you go to a back room where there is, you know, maybe a private room, you're closing the door and it's a public restaurant, but it's in a situation, I think that's a completely different. What if it's a private room but it's not completely secluded? Different situation and, you know, those clearly are not the facts in this case, but the issue is, is that a reasonable. Under your theory of the, under your interpretation of the law, if there is a private dining room but it's not completely secluded from the public area, there is a doorway that leads to the public area and the doorway is not closed. What would be your theory of whether or not there is a reasonable expectation that the conversation may be overheard? That's not the situation, but I understand. It's a Sanders case from the California Court of Appeal. So what's your view on that? That there may be a fact issue that needs to be, you know, that needs to be fleshed out. I think it's the California Supreme Court. Sanders' Supreme Court. Uh-huh. Sanders, I like Sanders in the area of the invasion of privacy because. Well, but Sanders says if it's a private dining room that's not completely secluded, you may have a reasonable expectation of privacy in there. You may. Right. But that your per se rule doesn't square with that. Well, I, with all due respect, you're saying that I'm saying it's a per se rule. I'm saying looking at the facts of this case, a public restaurant, open seating, bench seating, that there could be no. You say look at the facts of the case. It's, that's not a per se rule. So, correct. So are you, we have to look at the facts in each case. And Judge Selina looked at this and said they've presented enough to go that we can't call the question on an anti-slap motion. Why is that wrong? I tried to address it. He's wrong because, and, you know, that's why we have appeals. You know, there can be error if you, you know, if you make an error and you, you know, either misapply the law or don't look at all the evidence. For example, he didn't look at the evidence, and the law requires him to look at all the evidence and make that determination. And what evidence did he look at the video? I'm sorry? What evidence did he not look at? Well, he had looked at the video with regard to the preliminary injunction hearing. No, no. Answer my question. What evidence did Judge Selina have before him, have proffered to him, and not look at? I believe he says that he looked at the Rudolph Declaration. He made a citation to his ruling where he refused to consider or admit any evidence. He admitted the evidence. Then are you saying that Judge Selina admitted evidence but did not look at it? It's not part of his analysis for why he wrote. He did not mention it in his analysis, but that might be because he didn't consider it very important. It may be. So your position that he did not look at evidence is baseless. Give me the basis of it. He did not look at it. He had it before him. He did not talk about it. He did not talk about it. That's more accurate. That is a better way of, a more accurate way of putting it. And I apologize to the Court for mischaracterizing that statement. Okay. All right. It's not safe to assume that just because a judge fails to mention something that it's not being considered. There's a difference. All right. Thank you, counsel. Okay. Good morning, Your Honors. Good morning. May it please the Court, I'm Albert Nicholson, and I'm here to represent the appellees in this case, Safari Club International and Joan Whipple. Basically, the appellant is trying to get the Court to basically rule that the lower court judge abused his discretion when he actually did consider the Whipple declaration as well as the First Amendment complaint, and that he also did not, obviously, consider all of the evidence that was presented on this case. I'd like to briefly, first of all, talk about something that was just discussed. The judge, in his decision, did say that he considered all the evidence that was submitted by both parties to include both the video and the declaration of the appellant, as well as the Whipple declaration. So, as you guys were discussing earlier, he did consider all of the evidence. What is your position of what a district judge in this circumstance confronted with an anti-slap motion? What should the judge consider on the second step? Yes. The judge should consider, pursuant to Section 425.16b2, consider all pleadings and any supporting affidavits that are submitted both to support or oppose an anti-slap motion. And so the judge is allowed to consider pleadings, which he looked at our First Amendment. The complaint? The complaint as well, because that would be considered a complaint. I thought the law was that the plaintiff cannot rely on his pleading. We would disagree in the sense that it doesn't mean that the judge can't consider that because it has to look at the complaint in order to determine whether or not the causes of action are actually stated there, along with a declaration or an affidavit that's submitted to show that the facts are supported by legitimate legal facts that could be looked at to determine whether or not there is a promulgation case. But what case are you relying upon to support your argument that it was proper for the court to consider the complaint in making this assessment under the SLAP statute? We rely on the Selma case. The Selma case you're talking about? Yes, the Selma case. The Selma case. The Hessemovich, or I'm pronouncing that probably wrong, Hessemovich I guess is the name of it. Yes. Didn't that go the other way? It did go the other way, and in that particular case, the judge did make a ruling that it was not proper to consider the amended verified complaint. But the reason for that was the fact that that complaint had been drafted after they had had some hearings on the anti-SLAP motion, and the judge said, well, you can't submit additional information or additional evidence for me to consider. And, in fact, this amended complaint that the plaintiff in that case was trying to submit was not before the court. Well, but I think the court then also said you weren't supposed to consider the original complaint either. But does this issue matter in this case? Because if the Whipple Declaration is something that the district judge could consider, and I think counsel for Mr. Rudolph has sort of said that he doesn't have a problem with that, do we even need to deal with this first amended complaint issue? Because does it add anything that is not otherwise there in the Whipple Declaration? No, Your Honor. You're actually right. And the fact that they admitted that they are now not making that argument makes it irrelevant. That was interesting. And I'd like to talk about, you know, obviously there are two prongs that need to be addressed by a court when they are addressing an anti-SLAP motion, and the first prong being that they have to show that a private fake issue case, that there is a showing of an act or the cause of action arises out of furtherance or exercising the right to petition or the right of freedom of speech. And it's our argument that, you know, before getting to that first prong, that the law does allow the court to look at, as a matter of law, if the action that's actually done as a matter of law is illegal, then it's not protected under the anti-SLAP statute, and you actually don't even get to do the first prong. Isn't, though, Mr. Urgent-Terry right that that would mean, that would eviscerate the anti-SLAP provision because the plaintiff could simply always aver that there's some illegal conduct and then that would be the end of it? Well, we would disagree with that because the court in Flatley basically states, a showing required to establish conduct is illegal as a matter of law is either through the defendant's concession or by uncontroverted or conclusive evidence. Here we don't have the defendant or the appellant, you know, conceding that they have violated the law, but we do have uncontroverted and conclusive evidence that was in the record and that was presented to the district court. You've got the declaration of both Whipple and of Rudolph basically saying, I recorded the conversation. I did not have the authority or consent of Whipple to do so, which, you know, basically violates the tenets of California Penal Code 632. Objectively reasonable that other people could overhear what they were saying if it was not a private meeting. Well, the court in Lieberman says just because you have a conversation in a public place doesn't necessarily mean that it wasn't objectively unreasonable to have an expectation of privacy. So it wouldn't be illegal as a matter of law. You have to sort out whether or not the exception applies. Correct, Your Honor. And if the court were to hold, obviously, that the first prong, you know, was met, then, of course, we go to the second prong, which is, you know, the issue of the plaintiff here, excuse me, establishing that they have the probability of success in establishing that they can establish a prima facie case. Now, it's important to note the standard for the second prong requires that, again, the court consider the pleadings in supporting and opposing affidavits stating facts upon which the liability or defense is based, but it also requires what the court in Mindy's Cosmetics said, reasonable probability and a minimum level of legal sufficiency and triability. So in this prong, you know, all the plaintiff has to show is to show that there's some basis, legal basis for actually proceeding on their cause of action, and we believe that the appellees did so in this case. Also, in considering this prong, you cannot, the court cannot weigh the credibility or comparative strength or competing evidence, but should grant the motion if, by a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. Appellant argued basically, in essence, trying to get this court and wanted to get the lower court to actually weigh the evidence between the two parties by looking at the videotape and Rudolph's declaration to say that those were the use of the objective standard in establishing the confidentiality of the conversation versus what Whipple stated in his declaration, which he, the appellant has argued, is more subjective. So in this case, we have to look at the evidence. We have minimal standard of merit, and that's the standard that needs to be followed. So I'd like to talk about the Penal Code Section 632 claim. The issue there is that the conversation has to be confidential, and appellant was right in reading what the law states. A conversation is confidential under Section 32 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded. Now, the court in Lieberman, again, said expressly that the presence of others does not necessarily make an expectation of privacy objectively unreasonable, but it presents actually a question of fact for the jury to decide. And so in this case, you know, the fact that when you look at the Whipple declaration and you have to consider all admissible evidence in the favor of the plaintiff in this case, as true, it would show that we met the prima facie case to establish this cause of action. First of all, in Whipple's declaration, he considered and stated that they were longtime friends. Whipple also believed that the conversation was not capable of being overheard by other patrons. He did indicate in his declaration that when people approach, they stop talking about things of significance. It didn't say that they stopped talking, but things of significance. He also took steps, as indicated in his declaration, to keep it confidential by actually lowering his voice or stop talking when people approach. He was clearly, and stated so in his declaration, was not aware that he was secretly being recorded. He also stated that he would not have agreed to the meeting had he known that it was going to be recorded. And, in fact, he agreed to it because Rudolph, the appellant, had assured him that the only reason that he had been sued was only because of his position as president of the Sahara Court. Counsel, what's your response to opposing counsel's observation that those subjective sentiments are not pertinent, that we look at the objective circumstances and a reasonable person would not have thought that the conversation would be private in a public restaurant where other people were present? What's your response to that? Well, again, going back to what the standard is for the court to follow, they can't weigh the credibility or the probative value of the evidence presented. But he's saying that's subjective impressions. It has nothing to do with the objectivity of the finding that's supposed to be made. What's your response to that? Well, first of all, the Whipple Declaration, just like the Rudolph Declaration, was based upon personal knowledge. And, actually, Whipple was there, so he could testify as to what went on from his perspective. And I don't think that the standard that was articulated by the appellant in this case is the correct standard as far as looking at the objectivity of the circumstance. The court, like I said, again, must look at the fact that it's in a public place and looking at all of those things is a question of fact that a jury has to determine, which in this case would mean that the court was correct in denying the anti-SLAPP motion as to that particular cause of action. Can I direct your attention to, I know you're talking about the 632 claim, but the common law invasion of privacy claim, which, as I understand it, Mr. Whipple, it's Mr. Whipple's claim, right? Correct. Yeah. An element of that, as I understand it, is you have to show that it was highly offensive, that the intrusion was highly offensive. And in most of the cases that I was looking at, it occurs in hospital rooms or bedrooms or places where there truly is sort of this heightened sense of privacy. How is this, even if you get through all the other hurdles, how is this highly offensive? Why does this satisfy that standard? Well, there is no case law that is directly on point for our particular situations as far as the facts are concerned because, like you stated correctly, the other cases deal with other situations in a person's private home. However, in our situation, the fact, if we go back to the actual act of what occurred, which was his recording, meaning the appellant's recording of the conversation without the consent or knowledge of Mr. Whipple, that in and of itself is offensive. And, in fact, the California legislature thought so because they passed the California Penal Code Section 632. Does that make it outrageous, though? I believe that it would because they actually made that a criminal kind of act in order to do that and attached also monetary damages attached to it from a civil standpoint. Is there something you can point us to that does equate this notion of, if it's been criminalized, it translates into it's highly offensive, outrageous? There's no case law that I'm aware of that states that. You wouldn't say that somebody driving too fast is highly offensive, would you? No. It's a violation of the law, but it's highly offensive. And the fact that somebody having a conversation without the expectation of it being recorded to later find that out could be highly offensive. And the case where you can't control the dissemination or how you're presenting that information because you are not aware of it being recorded makes a difference as far as your privacy going back to the invasion of privacy claim. And just to touch on that, again, if you look at the declaration of Whipple, he establishes that he had some expectations of privacy, even though it occurred in a restaurant. And I know appellants have, you know, cited to the Wilkins case, but that one is distinguishable from ours because in that they were in a restaurant, they were in a public place, they could be overheard, but they were discussing business matters versus personal things, which is the difference. And so they heightened the expectation of privacy. Also, the parties in that case, they were talking about business. They also stated they had no intentions of necessarily keeping it quiet. They had talked about this kind of stuff in public before, so it was a different circumstance from the one that we have here in this case. And so I believe that that case is distinguishable. And I've run out of time. All right. Thank you, counsel. Rebuttal. We'll give you two minutes for a rebuttal. Thank you, Your Honor. I'd like to first address the Lieberman case, which was brought up, which counsel indicated stood for the proposition that if somebody else is present, it doesn't automatically mean that there is no expectation that you might not be overheard. The circumstances in Lieberman are completely different. That was a situation where a patient and a guest went into a doctor's office. And so the fact that a guest was present in the room did not negate the possibility that that could be a confidential communication. I compare that case with the cases that we cite, Wilkins, Davis, and Chamberlain. Davis was a conversation in a hotel lobby, public place, as a matter of law, no violation. Chamberlain was, I believe, a store, a tire store, no violation. Those are public places. You do have to do and look at what the objective evidence as to where the conversation took place to decide that. And the Flanagan case is the case that stands that says that you have to have an objective standard, that subjective views do not matter. And then finally, with regard to the highly offensive question that Your Honor raised, our position obviously is that there was no highly offensive action here. If you look at the cases such as De Tercera, I'm sorry, it's a difficult name to pronounce. And if you look also at the Wilkins case, if you look at the Shulman case, those are places that are public where there's no invasion. And then you compare that with the Dietman case and the Miller case, Stessman case, where people are invading private places like homes, doctor's offices, et cetera, that there is a distinction and that this case is much closer to the public places where there could be no invasion. Counsel, are you familiar with the Opperman case from the Northern District of California that's interpreting highly offensive? It says when a reasonable man would strongly object. Are you familiar with that? I'm not familiar with that. I understand the concept of, you know, the cases do say that, you know, that the court exercise and the court looks at this and makes an initial determination as to whether that is highly offensive. And there are a number of cases, I mean, a number of cases where they decide that, you know, as a matter of law, it's not highly offensive. It's not always a fact issue. I understand that if a reasonable man would strongly object, do you think it's met under the facts of this case? I do not. These are – I know that they're friends, but they're opponents in litigation. They were discussing – the comment was that at Wilkins they were talking business, and this is they were talking personal. They weren't talking about anything personal here. The whole thing that they were talking about is the litigation and what was happening with the Safari Club, which is specifically a matter in dispute between the parties of opposing sides. So, you know, if somebody is willing to talk to their opponent and talk about, you know, that litigation, things that could be asked in deposition, things that are not private. But if he lured him there based on the friendship and the assurance that he was only sued because he was president, you wouldn't think that would be – that a reasonable person would strongly object to being lured in that way? I believe that if you're an opponent – even if you're a friend, if you're an opponent in litigation and you're not aware that that could be – you know, that those are admissions that could be used against you. Shame on you? Yes, Your Honor. Okay. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. That completes our calendar for the day and for the week. We are adjourned. All rise.
judges: Rawlinson, Bea, Seeborg